All rise. Please be seated. Good afternoon. The case called for oral argument is Nichols v. Fahrenkamp. Counselor? May it please the Court, Roy DeRips. I'm here with my partner, Michael Goldfield, on behalf of a plaintiff, Alexis Nichols. Defendant asks this Court to adopt a rule of absolute immunity that would insulate attorneys who have been appointed to represent a minor's interests in a personal injury case from liability for anything. Not just for negligence, but even for intentional conduct. The case comes before this Court on a grant of summary judgment. I'm not going to belabor the standard of review, but certain aspects are important in light of the conflict between defendant Fahrenkamp's affidavit and the plaintiff's affidavit. And if there is a conflict in the record regarding material issue of fact, summary judgments must be reversed. This Court's review is de novo, and the Court is not bound by the trial court's conclusions. I'm going to address three broad issues. First, duty. Second, immunity. And then finally, breach of duty. First, the trial court erroneously found that defendant owed the plaintiff no duty. The Court stated that it granted summary judgment for defendant on the basis of no duty, but it supported that conclusion with a discussion of defendant's absolute immunity. Clearly, if there is no duty, there would be no need to discuss immunity. Didn't the trial court order indicate that if there's any duty owed, it's essentially to the court? Exactly. And I think that's fundamentally wrong for a couple of reasons. And let me get to that. First of all, the Romney case, which we cite in our brief at page 19, describes the GAL's duty as not a minor formality, and it is the duty of such guardian to call the rights of the minor to the attention of the court, to present their interests and claim for them such protection as under the law they are entitled. So the court mistakenly concludes that the GAL is an advisor to the court. It's not. The GAL is an advocate for the minor. And the Ott and Cushing cases, which we cite at page 20 of our brief, describe the GAL as the minor's attorney. So the GAL is not a court-appointed neutral or master who should evaluate competing interests of parents and the minor and give advice to the court. The GAL's job is to represent the minor and the minor's interests. The trial court's order, frankly, is a mishmash. And the court rested some re-judgment on its finding that defendant owed no human duty, but failed to analyze or even discuss the duty issue at all. Well, let me ask you another question on this. When I read the trial court order, and I read it a few times, it seems like the trial court's vacillating between the GAL has an absolute immunity or the GAL has a qualified immunity. And ultimately, at the end of the order, came to the conclusion as to whatever degree of immunity the GAL possesses, it is sufficient not to be held liable in these circumstances and granted some re-judgment. Do you agree with that assessment of the trial court's order? I think that's fair. And one thing I do want to point out, because in listening to the previous oral argument, Justice Cates' question about duty of the court to inquire about subject matter jurisdiction, in the trial court's order, she addresses subparagraphs B and C specifically. She doesn't really address paragraph A, which related to monitoring of the settlement. But I think it's clear from the court's order that she's granting summary judgment as to the complaint. That's certainly the thrust of the final sentence. As of the entire complaint. Right, of the entire complaint. So that's my take on it. Reading the order, I don't think she's just granting partial summary judgment as to two claims of negligence. But the conclusion that there's absolute immunity, I think, suggests that this is intended by the trial judge to get rid of the entire complaint. What about qualified immunity? Yeah, here's the Gardner case, which the defense cites, talks about qualified immunity. But in this situation, Illinois courts really diverge from some of the federal decisions like Gardner. And as I was mentioning before, the Rahm case really puts it into the position that the GAL is not an arm of the court. The GAL is more similar to a court-appointed attorney in a criminal case. In a criminal case, a court-appointed attorney, even a public defender, is subject to be sued for legal malpractice. Well, let me – sorry to keep interrupting, but let me ask you this. The position of GAL is by appointment by the court. The GAL has certain responsibilities and duties to respond to the court, both as a matter of reporting and dealing with inquiries, and arguably has duties to the minor over which they are the guardian. So are those necessarily exclusive, mutually exclusive duties, or is the GAL in a position of having multiple duties? Well, I think in order to answer that, I'm going to have to disagree with your basic premise just a little bit. Okay. Feel free. You're not the first. We need to distinguish between GALs who are appointed under the Marriage and Dissolution of Marriage Act and the Developmentally Disabled Adult Act because those statutes prescribe specific duties for those GALs. And that's totally different than a common-law GAL appointed for a minor in an injury settlement. And so those statutory duties are not present. And in this case, the order appointing Mr. Faircamp as GAL didn't say anything about his duties. But isn't that really what the issue is here, Mr. Dripps? What was he supposed to do? Okay. I mean, we don't know from the order. No. And so we have to look at the case law as to what the GAL duties to a minor are. But the case law asks the rhetorical question, what was the GAL supposed to do? Now, in a settlement of a minor's estate, clearly the GAL is supposed to, I think, look out for the benefit of the child. Absolutely. I mean, if the mother were not the guardian here and it was Magna Bank or Regions, I don't think we'd be here. But we have a guardian who maintains involvement and bills for it, as I understand. Yes. So it's not like he was appointed and then did nothing. He continued to participate. And I think that's one of the problems, is that – and now I'm going to skip ahead to brooching duty because my interpretation of your question is that's really where that's headed. But there's a discrepancy, a conflict in the two affidavits where the plaintiff says, never talked to this guy. I have a job of my own. I'm paying for these expenses. And if he had talked to me, I would have told him, my mom's not paying for those. And I don't even know why. I never went to cheerleading camp. I went one time, and that was before. And she's getting paid $500 for cheerleading camp. She's getting paid $500 for cheerleading outfits. She's getting paid all this stuff, and either I'm paying for it out of my part-time earnings, which I'm contributing to her, or they don't exist. And so the thrust of the complaint is you had a duty to at least talk to your client because the minor in this case is Mr. Farringham's client under Illinois law. And if you had talked to your client, you would have learned that many of the expenses being claimed by mom were either manufactured or fraudulent. And so I think in this case, there is a genuine issue of material fact, Justice Gates, with regard to breach of duty. So let me look back. And I think there is a dearth of case law on this, which is why we cite CJX. And you can tell that if there's an Illinois case that's directly not a point, I'm not going to cite CJX. But the trial court relied on the South Carolina Supreme Court case Simpson v. Doggett, which held that a GAL could be sued for negligence by the minor at work, and specifically cited CJX. And Simpson says, there is nothing in the record going to show that the guardian ad litem did or attempted to do anything whatever to properly protect the interest of his ward. And when they quote CJ, and just say, if in consequence of a culpable omission or neglect of the guardian ad litem, the interests of the infant are sacrificed, the guardian may be punished for his neglect, as well as made to respond to the infant for the damage sustained. And I submit that in this state, there is no decision that is directly contrary to it in a common law injury case like this. I didn't see where anyone cited Illinois Supreme Court Rule 907, which talks about the minimum duties and responsibility of attorneys for minor children. Are you aware of that rule? I am not. Well, I think you should be. And having brought it up, Justice Goldenherz, we may want to allow some supplemental briefing on it. I certainly would welcome their view of how that rule impacts this case and whether there's a duty. But it does talk about guardian ad litems, or ad litems, depending, and how they're obligated to appear to all ethical rules governing attorneys and professional practice. So I noticed that you raised the ethical rule. We did. And indeed, there's an Illinois Supreme Court rule that says there is duty of compliance. I'll grant you 21 days to supplement on that issue. And, counsel, I'll grant you 21 days to respond. Sorry. No, I appreciate that. The trial court, in this case, concluded that where the court-appointed individual acts within the scope of his or her appointment to give advice to the court, that's where the trial court went off the tracks. There's nothing in the order that says the GAL is supposed to advise the court. And under the cases we've cited, the GAL's duty is to represent the minor. So there's nothing in the probate court order that suggests anything about giving advice to the court. Nothing in the case law supports the conclusion that the GAL's duty is to give advice to the court. It happens all the time. The trial judge says, do you think this is a fair settlement? Is everything okay? When you say yes as GAL, you're representing that child. And when you say yes, it's because you truly, after reviewing everything, you truly believe that the settlement is in the best interest of your client. But that's the issue, is once that's over, do you have a continuing duty, or does the lawyer have to withdraw or seek relief from the court to get out? I mean, you and I both know that these cases can go on for a long time, and the lawyers do nothing as a GAL. So are they then obligated to get out? Is that the best practice? I think the best practice would be for, in the order approving the settlement, to either permit the GAL to withdraw at that time, or provide for appointment of an additional or a new GAL at such time as there needs to be an approval of withdrawals or disbursements to the parent. I don't think that that's a problem that is so insoluble that it needs to be solved by a community. This court's decision in the Layton case, which is in our reply brief at page 7, I think it's from 1975, is in a court with Ron and Cushing's holdings that the GAL is appointed to represent the minors. It's not a holding in the Layton case, but what the court says is you should appoint a GAL to represent the minors. And I think that's really the thrust of the common law cases. What has also been ignored by the trial court is that not only is the GAL appointed by the court, but that means that the minor is a ward of the court. And so the ward should be entitled to at least as much protection as the GAL. And so I would suggest that the fact that the minor is a ward of the court trumps any immunity that might be conferred by a simple appointment order of an attorney. Are you saying there shouldn't be any immunity? Absolutely. Because the case law clearly allows for quasi-immunity. For certain parts of the activities, yes. Right, which is when the activities become crucial. Well, we specifically accepted from our complaint the issues regarding the approval of the settlement and the money that was disbursed to Mom at that time. So what we are focusing on is later on when he is recommending that the court approve disbursements to Mom without having talked to daughter about what's really going on. The cases cited by the defendant and relied on by the trial court involve statutory appointments. And those are completely different from the common law appointment here. The statutes are very specific with regard to what the child representative is supposed to do and how they are trained. That's different from a GAL who is appointed to advocate for the minor. And defendant's cases break down into either child representatives under the Marriage and Dissolution Act or the Disabled Adult Statute. They don't cite anything that doesn't involve a statutory appointment. So, which leads me to my other point. The legislature can step in and create immunity if it's needed. There's no reason for this court to adopt a blanket rule of immunity in a case like this when the legislature is perfectly free to act. Third, and I think this is crucial, is that other court appointments do not trigger immunity. The duties, according to the Supreme Court's decision in the Polk City case, the lawyer's duties are the same whether he's appointed or privately retained. Court-appointed criminal defense attorneys are subject to malpractice suits the same as any other attorney. And that's been the law in this state for decades. The Johnson case discusses that, that there's no immunity just because you're employed by the state. And that goes back to Curry v. Lau, which tells you that the test is whether the action is nominally against the state employee but is really a claim against the state where either one of two factors is present. First one is where judgment for the plaintiff could control the state. That's not anywhere near the case in this situation. Or subject the state to liability. That's not true either. Mr. Ferencamp is being sued in his private capacity. He's not employed by the state. The record reflects that he was not paid by the state or by the county. He was paid in the initial part of it by the insurance companies who funded the settlement. And then he was paid later on out of the minor's funds. And I think that's crucial. The minor is actually paying for this representation. Do you believe that the appointment of the GAL is also a fiduciary? Yes. A creation of a fiduciary relationship. So does a lawyer breach his fiduciary relationship to the child if the lawyer speaks to the mother about what the mother wants and not to the child? As he bills for his time with the mother, as I understand it, not with the child. I don't think that just talking to the mother is a breach as long as it is done for the benefit of the child. And I'm just going to put myself in Ferencamp's position at that time. His understanding, without talking to the minor, is mom's paying all the bills. He needs to see what the daughter needs. Talk to mom. Here's what she's going to need. And it turns out that, no, that's not true. Well, but that's a question, is how far should he go? That's why I ask. I mean, if the child's 13, does he now have to say, are you really getting tennis lessons? I mean, he's talked to the mother. Does he have a right to rely on the guardian? She's the guardian. I don't think he has a right to rely on the guardian because that's why he was appointed. If he could rely on the guardian, we wouldn't need a GAL. But if I may, if there is a duty and there's a fiduciary relationship, and he goes to the mom and says, why do you need this? And she says, well, I've got all these commitments. And this child is still of a tender age, so to speak, 13, 14. You still believe there's a duty to go even further, to speak to that child, and that if you don't do that, if you don't verify, you can't, in other words, you cannot rely on the guardian who has her own responsibilities. You cannot rely. That's your position. I'll take that in two stages. Quickly, just because. Yes, it is my position that the GAL cannot rely on the guardian. That's why he's appointed. Depending on the age of the child, the guardian or the GAL may have some indication of whether the child's information is reliable. Now, if the GAL actually talks to the client and has questions, then we're applying judgment, and it's a different case than the one that's before this court. This is not a case of application of judgment. This is a case of application of responsibility. Well, duty versus breach, right? Negligence, so. But your position is that he does not fulfill his duty. He breaches his duty if he doesn't go beyond speaking to the guardian. Absolutely. Okay, thank you so much. Thank you, counsel. Thank you for the indulgence. Counsel? And if you need a few more minutes, we'll grant that to you also. My name is Joe Hill. I represent David Farringham and his office. I'm the face of the court and counsel. I was going to talk about several things here, but when Mr. Gus went off on some of these things, it just called to mind a number of issues in this case. First of all, one of the things that's confusing is because there was a prior lawsuit against the father by the child. That court order is part of the record. And there's sometimes in that particular situation there, there was not a clear distinction. The child in this case had money from two sources. One of them was the funds that were put into restricting the child, basically, from that child for which the GAL was involved. And we had also an annuity that paid out money at certain periods of time. So when you read the first case in 2012 against the mother, there's a question that asked him what funds was allowed not to use the property. That creates a problem. The second thing is that when this case first started. Well, I lost you there. Why does that create a problem as to Mr. Farrakhan? Because Mr. Farrakhan had no connection with the application of the annuity. Well, I understand that. But what we're really talking about here is whether there's immunity and whether there's duty, right? And that would have been as related to the restricted account? Correct. Okay. Right. But in their recovery, they talk about that they did recover monies from the mother that were approved by the GAL. They state that. I think that was in there on their form. They state that. Now, the problem we have here, first of all, is a practical situation. We have in this particular case, when the settlement was made, the affidavit of the plaintiff says she never talked to Mr. Farrakhan, but that's just not correct because the approval of the settlement talks to her and her mother, and it's in his affidavit. The second point in that regard is the child is nine years old, so the question then is at what point in time or what age is the GAL supposed to talk to the child if there's such a duty? That's the first question. I mean, because you could have kids that are very bright and so forth and probably be up on top of a number of things at age 10 or 11, and some who wouldn't be on top of them at age 13 or 14 or 15. The other problem we have here is that when you look at the allegations in the complaint that he didn't monitor the expenditures, and then the next two all deal with after the fact, in other words, after the guardian got the money. The other thing that they completely ignore in their brief is that in this particular case, the person who handled the personal injury and in turn was submitting the petition on behalf of the mother under oath in every instance. And in the case of large expenditures of money, such as the automobile, there was a contract attached. On the lease of the apartment, there was a lease attached. So the only argument they could make is that possibly there was a monthly amount for beauty shops, gasoline, and miscellaneous expenses. Now, at what point in time would a child know what that cost would be? That's one question. The second question is there is an element that was money or taxes and payment of taxes. So a number of these things that the probate court did based upon the mother's petition is did two things, approved some specific items and then approved a general payment on a monthly basis to cover certain expenses, and increased that. The biggest increase was when the patient got a lease. Now, the question comes, are we going to say that any time a GAO is appointed or on behalf of a minor in a settlement case, and then they're not reviewed, that they're going to have to go and look at what's being asked and whether that's reasonable. And I think to that point, I think there's no question that they probably should. And the trial judge in the case against Mom said and stated in that case that the items that were sought by the mother in terms of a monthly expenditure on behalf of the child were fairly typical of all cases of this type. So if you're going to make a rule of what Mr. Ferencamp's duty is in this case, it's going to apply to every situation of a GAO in a personal injury settlement and subsequently classified by the parent. And how much should the GAO be required to look beyond a verified petition signed by the guardian and forwarded to him by the attorney that handled the case in the original instance? The cases that we cited, I don't know of any case that specifically deals with the same function as Mr. Ferencamp in this case. But we do have a number of cases dealing with the child representatives. And if you look at the statute, the domestic relations statute, the domestic relations statute does break out a GAO and a child advocate. And what they're doing in that statute is they're making a distinction, and that is the GAO, his duties or her duties, are to investigate the facts and make a recommendation to the court. The child representative is one who's actually in court advocating cross-examining and doing everything necessary as an attorney on behalf of the child. And it's our position, Mr. Ferencamp's obligation to do herein, was one to make an initial investigation so that the court didn't have to do that and then make a recommendation as to the defendant. And that's different than being appointed as a representative of a child to litigate or advocate in that manner. The case that we cited, the Velastic-Talic case, is a case that deals with a child advocate. It also cites in that case the Southern Court of Appeals case, the Golden case. And in that case, they likewise look at quasi-unity and absolute unity. And contrary to what's stated in the plaintiff's brief, that case holds that the child representative, both in the Golden case that they cite and in the Illinois case, there's an absolute unity situation. It's not qualified. Although I would agree that if you go back and look at, like, the U.S. Supreme Court case is dealing with the position of a GAO or a unity general, you look at what's the function, what's the function of the court, and then the court gets quasi-unity or not. But here we really have no guidance because the order didn't say. All we know is what your client did. Correct. So it's different in this particular case because we don't have a specific order saying what the attorney, the GAO, was supposed to do. Well, what they've advocated in their briefing, Your Honor, is that the GAO on his own should have required the mother to submit receipts, which was not an early appropriate court. And let's just assume that the GAO was under that situation. If he's under that situation, then you're going to have a GAO that's going to have to spend a considerable amount of time auditing. In other words, suppose Mr. Perrin can't talk to the daughter, okay? Or suppose that he put in there receipts that are going to be required. What's going to prevent the ward, when she reaches majority, from suing and says, you didn't look at the receipts right, you didn't audit this right, I told you that she wasn't spending this right and you didn't do anything. In other words, there's a real problem in the situation, and I think it's in the best interest of these type of cases. If the probate judge does not want or doesn't specify that he wants the GAO to go deeper into the situation, then I don't think the GAO should have to. And if the GAO doesn't have to, then he should have immunity. Does it make a difference if it's qualified immunity or absolute immunity? Well, I think in the case of Mr. Perrin's situation, I don't think we have a qualified situation. I think it should be absolute immunity, because his duty is to just say that these reasonable judges, they look to be reasonable to me. If the judge wants to have receipts or something beyond that, or an accounting afterwards, the court can answer that. And as a practical matter, you know, that can be done. But, I mean, they're putting a burden on him to do something that's not typically done, quite frankly. At the point, though, following the settlement, when he continues to approve disbursements and charges are his time, who's he representing? I think he's representing the court, because that's his duty. He's in a dual role, to some extent. He's representing the court, and he's also representing the child. How is he representing the court at that point? Because he's taking on the function of the judge. If we didn't have the GAO, I thought that the judge would have to inquire into what's the reason for these expenditures, why are they reasonable, et cetera, et cetera. And the judge would ask for the receipts. May or may not. But it's certainly logical to think that. Well, in this case, the judge didn't. Well, the judge had a GAO, right? Right. But, I mean, if the judge felt that there were receipts or things of that nature necessary, he would have asked the GAO to inquire again, didn't he? My concern, Mr. Hill, is, as you pointed out, at what age, assuming there is a duty, I mean, once you talk to the mother, who also has a fiduciary role, because she's been appointed as guardian of the estate, how far do you go? I mean, there's no bright line as to, if a child is nine and you're talking to him, are you talking about an annuity investment with a $600,000 cash settlement? I mean, no nine-year-old is going to understand that. Well, you're right. I don't even think at nine, if a mom came in and said, I need $2,000 in office, this, this, and this, I don't think the child would know that's what your mom's spending on her, but that's what nine is. Well, if she says she's going to tennis camp and she's really not. But, on the other hand, I don't think that a rule of law should depend on such intimate fact-finding. I think it's a general rule that we keep asking about, and that is, who was he representing? What was he doing? And it seems that he allowed himself to be continually involved as far as undertaking the duty to at least speak to mom. But then the question is, is that enough to give him immunity? Well, I mean... I mean, do you agree that that... Well, I... Is your basic argument that there's no duty to go to the child? No, I think the DAL would be in this situation. Let me give you an example, okay? If mom comes in and says, I want a specific allocation of money for a specific thing, okay? I think under those circumstances, in most instances, the DAL should require or ask that there be something to show that potential. In this case, there is. There's the insurance that's paid every year. There's the lease. There's the car. All right. The other ones are the missing legs. There are even some receipts in the file dealing with prom pictures and some of those expenses. So, I have a hard time trying to determine the only thing that could be argued that there wasn't receipts for was when the judge decided to give mom so much per month for all these miscellaneous things. Rather than her coming back all the time. Correct. Correct. Or to continue the states. I mean, it would seem to me that if you're going to have the DAL require and then have a duty to make sure there's receipts for all those things for every month, then we're going to be eating expenses the other way into the child's money for what? Isn't this somewhat analogous as far as consultation with the child? It seems to me it's somewhat analogous to the question trial... Excuse me. Trial judges always have as to whether to interview a child in a custody situation. And it's pretty much discretionary. Whether the judge feels that it would be helpful and render something useful. Whether it would just be detrimental to an already stressed child. And it's pretty much a discretionary call. Where in this court at least we've rarely criticized a trial judge's decision whether to interview or whether not to interview. Aren't you sort of getting into the discretionary area as to if and when to interrogate a minor who's in the situation when counsel has already consulted with and has an ongoing arrangement with the guardian of that minor? Right. I agree. Well, the other problem here is too that we're completely ignoring that the guardian and her attorney both are representing to the J.L. that these expenses are going to be paid. Now, should he have those expenses? That's occurred with generally all of those particular expenses? Yes, sir. Okay. I don't believe there are any expenses that it was not that situation that it was a specific petition. Now, maybe it was on a monthly basis or a monthly schedule or an allowance for the child. Thank you. Thank you. Thank you, counsel. Counsel? Excuse me. If Mr. Ferrykamp had talked to the plaintiff, she would have found out she had been kicked out of the mom's house. At what point in time? She was 17. And that is in the record. And how much money had already been depleted? I mean, she only had one more year before she found out, right? Right. So, before she was 17, how much money are you claiming was depleted as a result of his negligence? Ferrykamp specifically. Altogether, about $75,000. $75,000 up until the age of 17? Up until... Well, yeah, probably $65,000, $70,000 up until that point. But the child also knows whether she's living with mom, no matter what age she is. And you can ask, you know, a five-year-old, where are you living? Do you live with your mother? Do you live with an uncle? Even a child that age knows where he or she lives. The plaintiff is also paying rent out of her own private funds, non-settlement funds. And mom's claiming that she needed being reimbursed for the rent. That's another example of something that he could have learned if he had simply talked to her. You mean during this period of 17, 18? Right, right. But again, this gets to... Assuming the duty, assuming that he has some duty to this child, mom was lying, obviously. At what point does he have to make the switch? Can he rely on the guardian? The guardian has a duty. So you're saying he can't rely on the guardian of the estate who has to report to the court, who has to provide the petition? I don't think he can take what the guardian says on faith. I think he has to talk to the child and make some investigations to determine whether or not in fact the money is being used for the child. And to get back to your question about the age justice case, I think it's interesting that Eric Camps' affidavit did not say, I tried to talk to the child but I determined that she was unreliable because of her youth. So your position would be you should always at least make an effort to consult with the child? Absolutely. And I think if you don't make that basic effort, you've got nobody. It's not qualified because there's no exercise of judgment. If there are no other questions, I would simply ask the court to reverse the order of the circuit court and remand for further proceedings. Thank you, counsel. Thank you. We appreciate the briefs and arguments from counsel. And we'll take this case under advisement. Thank you. Can I ask one question? Sure. What should I call what I am filing in 2018? I think it's a supplemental argument. Thank you. And yours is a supplemental argument also. Thank you.